## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**FONTAINE HORTON,**                           :

                                               :

           **Petitioner**          **Criminal No. 03-CR-14-104**

**v.**                                          :

                                               **(JUDGE MANNION)**

**UNITED STATES OF AMERICA,**      :

                                               :

          **Respondent**

## <u>MEMORANDUM</u>

Pending before the court is petitioner Fontaine Horton's ("Horton") Motion to Vacate, Set Aside, or Correct Sentence, filed on July 11, 2018. (Doc. 661). Horton's motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims. Horton, through counsel, supplemented his §2255 motion on January 31, 2020. (Doc. 679). For the reasons discussed below, after appointing Horton counsel and conducting an evidentiary hearing on March 4, 2020, the court will **DENY** the motion.

## I.    BACKGROUND[1]

On June 9, 2015, Horton and his co-defendant Reginald Braddy were both charged in a Superseding Indictment, (Doc. 389), with conspiracy to

---

[1]Since the court has previously stated the facts and background of Horton's case in its April 14, 2017 Memorandum, (Doc. 609), and since the

distribute or possess with intent to distribute methamphetamine, cocaine, and heroin. Additionally, Horton was charged with two counts of distribution or possession with intent to distribute methamphetamine.[2] Both Braddy and Horton pled not guilty to all counts of the Superseding Indictment. (Docs. 402, 404).

Following a 4-day trial from May 22 - 26, 2016, a jury found Horton and

---

parties state them in their instant filings, there is no reason to fully repeat them herein. (S*ee also* Doc. 627-1, Opinion of Third Circuit).

[2]As the government explains in its brief, (Doc. 667 at 13):

On April 15, 2014, a grand jury sitting in Scranton issued an indictment charging Fontaine Horton, Reginald Braddy and five other co-defendants with conspiracy to distribute methamphetamine (Count 1). (Doc. 57). The indictment also charged Horton with two counts of distribution of methamphetamine (Counts 4 and 5). Id. The five other co-defendants in the case negotiated plea agreements. Horton and Braddy did not negotiate plea agreements and decided to proceed to trial. In preparing for trial and interviewing witnesses, the government learned that Horton and Braddy were not only involved in methamphetamine trafficking, but were also involved in cocaine and heroin trafficking. The government presented this additional evidence to the grand jury, which, on June 9, 2015, issued a superseding indictment charging Horton and Braddy with conspiracy to distribute methamphetamine, cocaine and heroin (Count 1). (Doc. 389). The superseding indictment also charged Horton with the same two counts of distribution of methamphetamine (Counts 2 and 3) as the original indictment. Id.

Braddy guilty on all counts against them in the Superseding Indictment. (Doc. 535).

A Presentence Report ("PSR") was prepared regarding Horton. Horton, through his trial counsel, filed objections to the PSR challenging the drug quantities used to calculate his Guideline range. (Doc. 594). On April 14, 2017, the court issued a Memorandum, (Doc. 609), and Order, (Doc. 610), denying Horton's objections to the PSR based on drug quantities. The court then conducted a sentencing hearing on April 25, 2017, and sentenced Horton to 188 months in prison. (Doc. 620). Horton filed a timely notice of appeal. On December 6, 2017, the Third Circuit affirmed Horton's conviction and sentence. *See* United States v. Braddy and Horton, 2017 WL 6033419 (3d Cir. 2017). (Doc. 627-1). Horton did not file a writ of certiorari.

On July 11, 2018, Horton timely filed his instant Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. §2255. (Doc. 661).[3] Horton also filed a brief in support of his motion with three exhibits attached. (Doc. 662). On September 25, 2019, Horton filed an amended §2255 motion which is essentially identical to his original motion. (Doc. 664). Attached to Horton's amended motion is another brief in support along with an exhibit.

---

[3] Since the clerk of court's office accidentally misplaced Horton's original §2255 motion, the court directed Horton to file it again and it was marked as if filed on July 11, 2018, the date he initially filed his motion.

On October 25, 2019, the government filed its brief in opposition to Horton's §2255 motion with an Affidavit of trial counsel attached. (Docs. 667, 667-1).

In his §2255 motion, Horton requested an evidentiary hearing. The government contended that a hearing was not warranted in this case. However, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). Horton contends that if he had been aware of the plea offer and its conditions, he would have accepted it and he would have been sentenced to a significantly lesser term of imprisonment.

On December 4, 2019, the court issued an Order setting a hearing on Horton's §2255 motion for February 5, 2020, and appointed a CJA attorney, Stephen F. Becker, to represent Horton pursuant to 18 U.S.C. §3006A. (Docs. 668 & 669). Horton, through counsel, then filed a motion to continue the hearing and a motion to amend/correct his §2255 motion. The court granted both motions.

On January 31, 2020, Horton filed a counseled supplement to his §2255 motion with an attached exhibit, namely a copy of a formal written plea agreement government counsel sent Horton's trial counsel. (Doc. 679) Horton then filed another motion to continue the hearing and the court rescheduled it for March 4, 2020. (Doc. 682).

The evidentiary hearing was then conducted on March 4, 2020 and both Horton and trial counsel testified. Also, evidence was submitted by both parties and admitted by the court.

The court then directed that supplemental briefs be filed by April 3, 2020, and reply briefs be filed by April 17, 2020. (Doc. 684). The transcript from the hearing was filed on March 6, 2020. (Doc. 686). Both parties then timely filed their supplemental briefs. (Docs. 687 & 688). Horton filed a reply brief on April 17, 2020, (Doc. 689), the government did not.

## II.    STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant]

may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D.Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v.

Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013) (citation omitted). Horton's instant claims fall within the purview of §2255 since they challenge the effectiveness of his trial counsel. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Williams v. United States, 2016 WL 6892375, *2 (M.D.Pa. Nov. 22, 2016) (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing in Strickland, 466 U.S. at 700).

## III.    DISCUSSION

This court has jurisdiction over Horton's motion under §2255 pursuant to pursuant to 28 U.S.C. §§1331 and 2241.

In his *pro se* §2255 motion, Horton raised two claims. First, he alleged that his trial counsel rendered ineffective assistance for failing to advise him that "he could enter an open plea or in the alternative accept the government's informal plea and ... receive a reduced sentence without having to cooperate." (Doc. 661). Thus, the court construes Horton's first claim to be that trial counsel provided ineffective assistance of counsel since he did not inform Horton of an alleged informal plea offer made by the

government via an email dated February 25, 2015 from AUSA Robert O'Hara to trial counsel (which was attached to Horton's §2255 motion and admitted at the hearing as Defendant's Ex. 2) and, that if he was aware of the offer and its conditions, he would have accepted it. Second, Horton challenged the sufficiency of the indictment claiming that after he was charged in the initial indictment with various drug offenses, "the indictment was superceded (sic) or altered by listing other controlled substances not listed in the original indictment", and that the Grand Jury did not indict him on the additional charges.

In his supplemental §2255 motion, (Doc. 679), Horton alleged that trial counsel provided ineffective assistance since he did not inform Horton of a subsequent formal written plea agreement proposed by the government and, that if he was aware of that plea agreement and its conditions, he would have accepted it. Horton attached to his supplemental motion, as Exhibit A, the formal written plea agreement, an addendum to the plea agreement, and O'Hara's cover email dated May 5, 2015 to trial counsel. (Doc. 679-1). At the hearing these documents were admitted into evidence as Defendant's Exs. 6.1 and 6.2.

The court will address Horton's two remaining claims of ineffective assistance of trial counsel.[4]

## 1. Claim One

Horton claims that his trial counsel was ineffective for failing to advise him that he could enter an open guilty plea in court,[5] and for failing to advise him of the government's alleged informal plea offer. Specifically, Horton claims that his counsel was ineffective for failing to inform him of an informal plea offer made in a February 25, 2015 email from O'Hara to trial counsel. Consequently, Horton claims that if he was properly advised by counsel, he would have accepted the informal offer and received a reduced sentence,

---

[4]At the hearing, Horton's counsel, Becker, withdrew Horton's *pro se* second claim in which Horton challenged the sufficiency of the superseding indictment and contended that it violated his 5th Amendment right since the Grand Jury did not indict him on the additional charges contained in it. Thus, this claim will not be addressed herein.

The court also notes that since it already decided and found no merit to the claim challenging the validity of the superseding indictment, when it denied a pre-trial motion to dismiss the indictment, (Doc. 554), "the court will not consider th[is] argument[] anew, and th[is] claim[] for relief will be denied." United States v. Green, 2016 WL 11201635, *3 (E.D.Pa. Dec. 9, 2016). See also United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. §2255.").

[5]An "open" plea is when there is no plea agreement between the defendant and the government. United States v. Giamo, 153 F.Supp.3d 744, 748 (E.D.Pa. 2015).

even if he did not cooperate with the government. In particular, Horton contends that if it was not for his counsel's advice, he would have either accepted the government's alleged informal plea offer or entered an open guilty plea without agreeing to cooperate. In either scenario, Horton claims that he would have received a lower sentence than he did by going to trial and being found guilty. Further, Horton states in his motion that he "did not have a valid defense and his counsel convinced him that if he did not cooperate with the government[,] trial would be his only option."

Thus, Horton claims that the failure of his counsel to properly advise him prejudiced him since he would have received a lower sentence if he had pled guilty. Specifically, Horton contends that due to his counsel's "prejudicial error" and due to counsel's failure to inform him of the government's informal plea offer, his sentence was increased by 101 months or 8.4 years, i.e., he would have received a sentence of 87 months instead of the 188-month sentence that the court imposed after he was found guilty at trial.

Horton also claims that after his first meeting with his counsel on April 30, 2014, when he pled not guilty at his arraignment to the conspiracy charge in the original indictment, his counsel did not communicate with him until 15 months later. He states that he wrote letters to the clerk of court indicating

that his counsel was not participating in the plea process and, that he wanted to plead guilty on the last day of his trial. However, at the hearing Horton did not address this claim regarding lack of communication with trial counsel prior to trial and he did not present any evidence on it. Further, the record shows that trial counsel had regular and ongoing discussions with Horton before his trial about his case. Thus, the court finds no merit to Horton's uncorroborated claim that trial counsel did not communicate with him before trial and that he did not provide advice about the benefits and advantages if he pled guilty. See Slane, id. at *23 (citing Samet v. United States, 559 F.App'x 47, 49 (2d Cir. 2014) ("district courts need not accept the uncorroborated statements of a criminal defendant at face value.")).

Horton states that he first discovered the government's alleged informal plea offer to his counsel when he met with his counsel to prepare 10 days before his trial started and saw an email from the government to his counsel making the offer. Horton attached the email to his brief, (Doc. 662), as Exhibit B. At the hearing, the email from O'Hara to trial counsel dated February 25, 2015 was also admitted as Defendant's Ex. 2. Horton states that his counsel never made him aware of the government's alleged "informal offer" contained in the email and that when he did become aware of it at the time of his trial, his counsel told him that "it was too late to accept the government's informal

offer and enter an open plea." As such, Horton states that his counsel was ineffective since his counsel did not allow him to make an informed decision regarding the government's informal plea offer as he was not aware of it. He also states that his counsel gave him erroneous advice by telling him that the only way he could get a plea agreement was to cooperate with the government.

Additionally, Horton contends that his counsel was ineffective by failing to present the email from the government regarding the alleged informal plea offer, as evidence, during his trial. In fact, when Horton was testifying at his trial on May 25, 2016, he attempted to present the email on his own after he completed his testimony. The government objected and the court sustained the objection as there was no question posed to Horton and the court was not inclined to allow the defendant to engage in some sort of post questioning narrative. At the hearing, an excerpt of Horton's trial testimony in which he stated, "Excuse me. I have an email here", was admitted as Defendant's Ex. 4.

Moreover, Horton argues that the court should vacate his sentence based upon the alleged informal plea offer contained in the government email which he claims was not presented to him. (See Defendant Exhibit 2). Horton concludes his first claim by stating that he has "shown a reasonably (sic)

probability that, but for counsel's ineffective assistance, he would have accepted the informal plea offer, rather than proceeding to trial."

In response to Horton's first claim, the government points to trial counsel's October 22, 2019 Affidavit, (Doc. 667-1), in which he avers that "[t]hroughout his representation of Mr. Horton, I discussed with him the advantages of pleading guilty as opposed to the risk of trial." The government argues that there was no informal plea offer made as Horton alleges based on its email to trial counsel. For support, the government points to the language of the email and to trial counsel's sworn statement in his Affidavit. (Doc. 667-1).

According to trial counsel, Horton did not want to enter an open guilty plea (i.e., a plea with no agreement) to the entire superseding indictment. Rather, trial counsel avers that Horton only indicated to him that he would plead guilty to Counts 2 and 3 of the superseding indictment, i.e., the two substantive counts of distribution of methamphetamine, and that he would not plead guilty to the conspiracy charge in Count 1. Trial counsel states in his Affidavit that he explained to Horton that even if the government would accept such a plea agreement, "the pre-sentence report would reflect a greater offense level than that contained in the two drug sales [Counts 2 &

3], because he would likely be held responsible for all of the drug weight in the conspiracy, due to the concept of 'relevant conduct' set forth in the [U.S.S.G.]." Trial counsel further avers that throughout his representation of Horton he "explained to him the benefit of a guilty plea as opposed to a trial." (Id.).

Significantly, trial counsel states in his Affidavit that even though "no formal plea offer was made by the government, I discussed with Mr. Horton the advantage of a guilty plea (even with relevant conduct) under the sentencing guidelines, versus a trial." In particular, trial counsel told Horton that since he had no prior record, he would be eligible for a sentence reduction under the "safety valve" pursuant to the U.S. Sentencing Guideline[5], and that to be eligible he would have to meet with the government and explain his involvement with the drug conspiracy charged in the superseding indictment. trial counsel told Horton that although the "sit down" with the government would not be considered cooperation, and he would not be expected to cooperate, "he would be expected to give an honest rendition of his involvement in the conspiracy." Trial counsel also states that if Horton had pled guilty and accepted responsibility and, if he had been eligible for

---

[5]See U.S.S.G. §5C1.2(a)(5).

16

the "safety valve", his sentencing range would have been 70-87 months. In fact, trial counsel's Affidavit is consistent with O'Hara's February 25, 2015 email regarding the "safety valve." Despite the detailed information trial counsel provided to Horton, with specific discussions of the benefits of pleading guilty and the requirements of a plea, he avers that "Horton indicated that he wanted to proceed to trial."

Trial counsel also gave Horton important advice about "relevant conduct." "Under U.S.S.G. §1B1.3, 'relevant conduct' refers to the factors that determine the Guidelines range for the offense conduct and adjustments. Relevant conduct includes 'all acts and omissions committed ... that occurred during the commission of the offense of conviction, [or] in preparation for that offense ...' or 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" Jacobs v. United States, 2018 WL 2018056, *13 (D.N.J. May 1, 2018) (citing United States v. Sullivan, 414 Fed.Appx. 477, 480 (3d Cir. 2011)). Trial counsel explained to Horton that "relevant conduct" could be considered under U.S.S.G. §1B1.3 even if the government would have agreed to a plea to Counts 2 and 3, and not to the conspiracy charge, since "relevant conduct is not limited to the specific [convicted offenses]", and the court can "consider

evidence that would have been admitted at trial relating to the other counts in the Superseding Indictment to which [Horton] did not plead guilty." Id.

At the March 4, 2020 hearing, trial counsel testified that the O'Hara email did discuss the guidelines if Horton pled guilty and the different forms of methamphetamine. He also testified that he was "sure" he discussed O'Hara's email with Horton but admitted that "I really don't remember showing [Horton] the [email]." Trial counsel further testified that the email was not a plea offer and that its purpose was to discuss the guidelines and sentencing range Horton faced.

In any event, according to trial counsel, even though the government did not make a formal plea offer in the email, he discussed with Horton the guideline range if he pled guilty. Despite this discussion, he stated that it was Horton's informed decision to go to trial, made after they had a thorough discussion about a potential plea and the benefits that a plea would have over a trial. In his Affidavit, trial counsel also avers that he discussed with Horton the advantage of a guilty plea and that "[n]onetheless, Mr. Horton indicated that he wanted to proceed to trial." (Doc. 667-1). Trial counsel testified at the hearing, that after discussing a possible plea, Horton was not willing to plead guilty to the conspiracy charge and he never wavered from this position.

Further, trial counsel's Affidavit indicates that he accurately discussed the sentencing parameters with Horton, applicable if he pled guilty and if he went to trial. It also indicates that trial counsel was knowledgeable about the law pertaining to Horton's charges as required to render effective assistance pursuant to United States v. Bui, 795 F.3d 363 (3d Cir. 2015).

Initially, the court finds that even though trial counsel may not have actually shown Horton the physical O'Hara email when he received it, he did discuss the contents of the email with Horton, specifically, regarding the guideline range if he pled guilty. Trial counsel also testified that he had several and "persistent" discussions with Horton regarding the sentencing guidelines applicable to his case. Further, Horton admitted in his testimony that he saw O'Hara's February 25, 2015 email shortly before his trial started, but he claims without elaboration that trial counsel told him it was "no good."

In Missouri v. Frye, 566 U.S. 134, 145, 132 S.Ct. 1399 (2012), the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Thus, "the Sixth Amendment right to counsel provides that an accused is entitled to the effective assistance of counsel at all phases of the prosecution of criminal charges, ..., including during the plea-bargaining process ...." U.S. v. Slane,

2015 WL 728481, *15 (W.D.Pa. Feb. 19, 2015) (internal citations omitted).

"The Supreme Court held in <u>Frye</u> that a criminal defense lawyer was constitutionally ineffective for failing to communicate a plea agreement offer to his client and expounded in <u>Lafler</u> [v. Cooper, 566 U.S. 668, 132 S.Ct. 1376, 1384 (2012)] that '[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.'" <u>Id</u>. Also, "[c]ounsel is required to 'give a defendant information sufficient to make a reasonably informed decision whether to accept a plea offer.'" <u>Id</u>. (citations omitted). Further, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." <u>United States v. Day</u>, 969 F.2d 39, 43 (3d Cir. 1992).

However, the government was not obliged to offer Horton a plea agreement. Indeed, "[t]he law is well established that 'defendants have no right [constitutional or otherwise] to be offered a plea [by the government],' and '[i]f no plea offer is made ... [ineffective assistance of counsel] simply does not arise.'" <u>Slane</u>, 2015 WL 728481, *16 (citing <u>Lafler</u>, 132 S.Ct. at 1385). <u>See</u> <u>also</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 561, 97 S.Ct. 837 (1977) (Supreme Court held that a defendant has "no constitutional right to plea bargain" and the prosecutor has sole discretion whether to offer a plea bargain). Whether a plea offer exists is "a factual determination", and whether

a purported plea offer is made is "analyzed under general contract law principles." Slane, 2015 WL 728481, *16 (citation omitted).

Additionally, "[t]he decision on whether to charge a defendant with a crime or to offer a plea bargain is made by the prosecutor, not the defense counsel." U.S. v. Smith, 2009 WL 1578058, *4 (E.D.Pa. June 5, 2009). "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." Id. (quoting United States v. Batchelder, 442 U.S. 114, 124, 99 S.Ct. 2198 (1979) (stating that prosecutor has sole discretion in deciding whether to file criminal charges and what charges to file); see also United States v. Lovasco, 431 U.S. 783, 790–96, 97 S.Ct. 2044 (1977) (holding that, under the Due Process Clause of the Fifth Amendment, prosecutor has sole discretion to decide when to file criminal charges)).

As the court in Slane, 2015 WL 728481, *17, explained "all purported [plea] offers are analyzed under general contract law principles, pursuant to which communications concerning preliminary negotiations do not rise to the level of an offer unless the parties manifest an intention to be bound to terms set forth in the communication which are sufficiently definite and complete." (citing Reed v. Pittsburgh Bd. of Public Educ., 862 A.2d 131, 135 (Pa.Commw.Ct. Nov. 18, 2004) (quoting Restatement (Second) of Contracts

§26 (1979) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.")).

Based on the stated principles, the court finds that the February 25, 2015 email from O'Hara to trial counsel did not constitute either a formal or an informal plea offer. There were no terms in the email that were sufficient to constitute an offer under general contract law. Rather, as in Slane, id., "the language of the email constitutes an invitation to negotiate and not an enforceable offer." In fact, in the beginning of the email, counsel for the government (O'Hara) states that "I would like to point out several facts which may assist us in our plea discussions and ultimately trying to reach a resolution of this case." Government's counsel concluded the email by stating that "[a]ll of the above information is purely an estimate for discussion purposes regarding Mr. Horton's present situation ...." Additionally, the email does not mention a plea offer or plea agreement. In fact, trial counsel testified that the email was "a calculation of the guidelines, as to what the facts were at the time of the email", and that "[t]he purpose of this was to just generate some guideline ranges for discussion purposes." (N.T. 7, 24). Trial counsel also stated that he specifically asked government counsel to send the email

to permit him "to outline some of the facts so I could discuss them with [Horton]." (N.T. 8).

As the government explains in its supplemental brief, (Doc. 687 at 5-6), "the e-mail was sent to [trial counsel] in response to *his* request as to the government's position regarding the applicable sentencing guidelines in Horton's case. The request was made in light of the fact that the sentencing guidelines make reference to three different types of methamphetamine, depending on the drug's purity, which potentially could have increased the defendant's sentencing exposure, in addition to the fact that the government was considering the filing of a superseding indictment." (emphasis original) (citing N.T. 23-24).

Therefore, the court finds that the "email is not an offer for a plea but an invitation to negotiate a plea agreement and [continue] the plea bargaining process." Id.

Thus, Horton has not met his burden to demonstrate that his counsel was ineffective for failing to advise him about an alleged informal plea offer in O'Hara's email since the court has found no offer was made by the government in the email. See Slane, id. at *21 (citing Lafler, 132 S.Ct. at 1385 ("[i]f no plea offer is made ... [ineffective assistance of counsel] simply

does not arise.")). Also, as mentioned, trial counsel discussed the contents of the email with Horton. Any alleged prejudice that Horton may have suffered regarding his first claim that "he would have accepted a plea agreement and that there is a reasonable probability that his sentence would have been more favorable had he pursued a plea agreement", is thus "far too speculative" with respect to the email. U.S. v. Gonzalez-Rivera, 217 Fed.Appx. 166 (3d Cir. 2007).

As such, Horton's first claim of ineffective assistance of counsel regarding the alleged failure of counsel to advise him about the government's "informal [plea] offer" allegedly made in the O'Hara email is denied. See also Giamo, 153 F.Supp. 3d at 760-61 (court held that "[defendant] was not prejudiced by ineffective counsel because he cannot establish with reasonable probability that [a] plea deal would have been reached [with the government]."

Moreover, to the extent that Horton claims counsel was ineffective for failing to introduce at trial the stated email from government's counsel, as discussed above, the court has found that the email did not constitute an informal plea offer, and was not admissible at trial. Thus, the email was neither relevant nor admissible at Horton's trial. As such, "there is no reasonable probability that, but for counsel's unprofessional errors [with

respect to the failure to offer the email as evidence], the result of the proceeding would have been different." United

States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007). Therefore, Horton's ineffective assistance of counsel claim concerning the failure of his counsel to offer the email into evidence at trial, will be denied since he cannot establish any prejudice. *See* United States v. Green, 2016 WL 11201635, *4 (E.D.Pa. Dec. 9, 2016) (holding that Strickland, 466 U.S. at 697 "permitted denial of an ineffective assistance of counsel claim solely on a finding of no prejudice").

### 2. Claim Two

As his second claim, Horton contends that trial counsel provided ineffective assistance of counsel since he did not inform him of a May 5, 2015 email he received from O'Hara with an attached formal written plea agreement proposed by the government. Horton states that if he was aware of this plea agreement and its conditions, he would have accepted it. (Defendant's Exs. 6.1 and 6.2). Indeed, Horton testified at the hearing that if he was advised of the terms of the formal plea agreement and the meaning of conspiracy he would have accepted it in May of 2015. (N.T. 46).

At the hearing, trial counsel testified that he received the May 5, 2015 email from O'Hara, but he did not show the attached proposed written formal

plea agreement to Horton. (N.T. 9, 25, 33). Trial counsel stated "I would agree I didn't show it to [Horton], but I'm sure that I discussed it with him." He then repeatedly stated that he was sure he did discuss the proposed plea agreement with Horton after he received it from O'Hara. (N.T. 9, 10, 33).

However, trial counsel also seemingly contradicted himself in stating that "the formal written document I did not discuss." (N.T. 11-12, 20). Horton testified that trial counsel did not show and did not discuss with him the formal plea agreement. (N.T. 44). Trial counsel also admitted that it was a "mistake" to have averred in his Affidavit that the government did not offer Horton a "formal plea agreement."

The court then asked trial counsel to explain why he did not show Horton the actual written plea agreement, and he stated that "[b]ecause during the course of my representation it was clear to me that [Horton] was not going to plea to any conspiracy" and that "I had discussions with him regarding the conspiracy, but I just didn't think it was worth showing him the document," … [b]ecause the government at that point was willing to only take a conspiracy, and [Horton] was not willing to take a conspiracy." Further trial counsel conceded that while "it probably was an error on my part not to actually show [Horton] the physical document", [w]e did have discussion regarding it." (N.T. 33). He also stated that after he received the written plea

agreement, he discussed with Horton that the government would only accept a plea to the conspiracy charge. (N.T. 34).

Moreover, trial counsel emphasized that while he did inform Horton that the government would accept a plea to only the conspiracy charge, Horton was adamant at all times that he would not agree to any plea to that count. Rather, trial counsel stated that Horton would only plead to the two substantive delivery drug charges. In fact, he pointed out that during the trial Horton admitted in his testimony to committing the two drug delivery charges. (See Govt. Ex. 1). Trial counsel stated that even though he discussed the benefits of pleading guilty with Horton, such as his possible guideline offense level and range if he pled guilty to the conspiracy charge, Horton still wanted to go to trial since the government would not offer any plea deal without Horton pleading guilty to the conspiracy charge. Thus, trial counsel did not show Horton the formal written plea agreement from the government, which required Horton to plead to the conspiracy charge, since he knew that Horton would not plead to that charge based on his ongoing discussions with Horton and Horton's repeated directive that he was only willing to plead to the two substantive drug counts.

In fact, as the government states, (Doc. 687 at 7), in its supplemental brief: "The key terms of the proposed plea agreement included the following:

27

*Horton would enter a plea of guilty to Count 1 of the indictment, the charge of conspiracy to distribute methamphetamine*." (citing N.T. 25-26, 45-46) (emphasis added).

Trial counsel admitted that paragraph 12 of the proposed plea agreement provided that the parties would recommend that Horton's role in the drug conspiracy involved more than 1.5 kilograms of methamphetamine but less than 5 kilograms. The plea agreement also provided that the maximum sentence Horton would face if he pled guilty was 20 years in prison and that the court was not bound by the plea agreement and could impose any sentence up to the maximum. Trial counsel indicated that if he pled, he believed that Horton's guideline range would be 70-87 months imprisonment. There was no dispute that the deadline for Horton to accept the plea agreement was May 31, 2015. It was also agreed that if Horton had accepted the plea agreement, the court probably would have also accepted it. Also, it was not disputed by trial counsel that if Horton had accepted the plea agreement his sentence "without a doubt" would have been lower, i.e., he would have had a guideline base offense level of 32 for the recommended drug weight minus a 3 level reduction for acceptance of responsibility bringing down his total offense level to 29, and his criminal history category

would have been 1. As such, Horton's guideline range would have been 70-87 months.

Based on his testimony, the court finds that trial counsel had appropriate and "persistent conversations" with Horton about a possible plea and advising that the government would <u>only</u> agree to a plea to the conspiracy charge, and by advising Horton about his relevant conduct and sentencing exposure under the guidelines if he pled guilty to conspiracy. (N.T. 36). "The Third Circuit has [] identified 'potential sentencing exposure' as a factor that must be included in this plea advisory process, requiring that counsel know the sentencing guidelines and relevant circuit precedent." <u>United States v. Giamo</u>, 153 F.Supp.3d 744, 755 (E.D.Pa. 2015) (citing <u>United States v. Bui</u>, 795 F.3d 363 (3d Cir. 2015)). The court also finds that trial counsel repeatedly discussed the pertinent provisions of the proposed formal plea agreement with Horton despite not physically showing him the document.

Regardless of the possible lower sentence Horton would have faced if he accepted the plea agreement, trial counsel again testified that Horton would not take any plea deal with the conspiracy charge. Trial counsel explained that Horton's relationship was very tight with his co-defendant Braddy, who was also his cousin, and that Horton would not accept any plea

to the conspiracy since he believed he would be hurting Braddy. Trial counsel also stated that Horton listened to Braddy who told him not to plead guilty and to go to trial with him. Horton then voluntarily and knowingly decided to go to trial with Braddy.

Further, trial counsel testified that Horton would not agree to cooperate with the government if he pled guilty. Trial counsel explained to Horton he would be eligible for the "safety valve" which would require Horton to sit down with the government and truthfully tell it everything he knew about the case and his role in the drug conspiracy, i.e., to tell the government about all evidence and information defendant knows about his "course of conduct." He told Horton that the safety valve would not require him to testify against anyone. Trial counsel stated that Horton would not agree to the requirements of the safety valve since he consistently stated that he was not part of the drug conspiracy. Trial counsel stated that Horton denied that he delivered any other drugs besides the two deliveries he was charged with in the indictment. Trial counsel also indicated that despite his explanation Horton thought the "safety valve" required cooperation with the government which Horton refused to do.

Specifically, trial counsel testified:

> I do recall that Fontaine [Horton] emphatically, over and over again, said that he would not plead to any conspiracy . . . at no time during the time I represented Fontaine would he agree to plead to conspiracy. He was emphatic about that on many, many occasions. He said that he would only plead guilty to the two substantive counts, which were the deliveries of methamphetamine in the Pocono area. I explained to him that the government would not take such a plea agreement; that they would only take the conspiracy. So he ended up going to trial. (N.T. 11).

Trial counsel also stated that he "[did not believe [Horton] would have plead guilty to a conspiracy if he was even offered probation." (N.T. 16). In fact, consistent with trial counsel's account of his ongoing discussions with Horton prior to trial, Horton admitted at trial that he was guilty of the charged two drug deliveries but denied being involved in the drug conspiracy and delivering any other drugs. Trial counsel also pointed out that the proposed plea agreement which required Horton to plead to the conspiracy charge would have involved a higher drug weight than the two drug delivery charges. (N.T. 24-26).

Additionally, when the court asked trial counsel if he advised Horton not to testify at trial, trial counsel stated that he explained to Horton that if he testified, was convicted and was found to have lied, then the court could enhance his sentence for obstruction. Nonetheless, trial counsel stated that it was then Horton's decision to testify at trial.

Horton also testified at the hearing and he admitted that trial counsel explained the "safety valve" to him, and he stated that it required him to sit down and talk with the government about his role in the case. However, Horton stated that he did not want to talk with the government and tell them about the case. (N.T. 42). Horton said that he first saw the February 25, 2015 email from O'Hara to trial counsel shortly before his trial started and that he discussed it with trial counsel, but trial counsel told him "it would do no good." Horton also recounted how he tried to bring up the email at the conclusion of his testimony at trial. (Defendant Ex. 4). Horton explained that he was trying to indicate to the court that he wanted to take a plea based on the informal offer in the email instead of continuing with the trial. (N.T. 43). Horton also reaffirmed the fact that trial counsel never showed him the formal written plea agreement O'Hara sent and said that the first time he saw it was when Becker showed it to him in preparing for his hearing on his §2255 motion. Horton stated that Becker went over the pertinent details of the plea agreement with him, (Defendant Ex. 6.2), and that he understood that he would have been pleading to conspiracy to sell 1.5 kilos to 5 kilos of meth. Horton stated that in 2015 he did not understand what conspiracy meant, and that after Becker fully explained it to him along with the specifics of the plea agreement, he would have accepted the proposed formal plea agreement. (N.T. 46).

32

However, on cross-exam, Horton again admitted that he never said that he would plead to conspiracy. Horton tried to explain and stated that "I said I'll plead out to the two [drug] sales. I never said I wouldn't accept the conspiracy", and never said "I would not plead to the conspiracy." (N.T. 47-48). Nonetheless, Horton admitted that when he was testifying at trial and asked if he was involved with a drug conspiracy that began in California with Braddy and other people, he responded "No." (Govt. Ex. 1, trial N.T. 158-160). When Horton was asked at trial if he sold drugs, he responded "No." Horton also responded "No" when asked at trial if he conspired with Scott Borushak, an indicted co-conspirator, to sell drugs. Horton did admit at trial to the two drug sales of methamphetamine charged in the indictment to Omar Moate and, he stated that his drug experience was limited to only those two sales. But Horton stated emphatically under oath at trial that he was not guilty of conspiracy. Horton also testified that he was not involved in any other drug sales and that he never delivered heroin or cocaine to anyone. Significantly, the conspiracy charged in the superseding indictment alleged that Horton was involved with the sale of methamphetamine, heroin, and cocaine. Horton also admitted at the hearing to testifying at trial that he was "never guilty of any conspiracy." Further, as the government points out, "Horton [during the hearing] could offer no explanation when confronted with his sworn trial

testimony in which he repeatedly denied involvement in any drug trafficking conspiracy." (N.T. 48-51, 52-53).

Then, in contradiction to his own direct exam testimony at the hearing in which he stated that he would have been willing to plead guilty to the conspiracy charge, (N.T. 45-46), Horton on cross-exam stated that he was guilty of the two charged drug sales but that he was not guilty of any conspiracy and did not want to plead guilty to conspiracy. The courts finds no merit to Horton's obvious attempt to reconstruct the facts of yesterday to meet his needs today. Horton never told trial counsel that he would plead guilty to conspiracy, rather he repeatedly told trial counsel that he would not. Also, the trial cross-examination of Horton by the government made clear what the conspiracy charge involved and Horton did not have to be knowledgeable of the law to understand the basis of this charge when he testified that he was not involved in any conspiracy to sell drugs. Semantics aside, the fact remains that Horton clearly testified under oath at his trial that he was not involved with and was not guilty of the conspiracy that was charged in the superseding indictment, and this is consistent with trial counsel's testimony.

The court then asked Horton, at the hearing, whether he continually told trial counsel that he would not plead guilty to conspiracy, and Horton

admitted that he did but again responded, "I never said I would not plead out to the conspiracy", since trial counsel never showed him or discussed a plea agreement. (N.T. 53-54). Horton stated that trial counsel's testimony was not correct in this respect. The court then asked Horton why he testified at trial that he was not involved in the conspiracy and explained to Horton that if he pled guilty to conspiracy he would have had to admit facts showing his participation in a conspiracy to distribute drugs. Specifically, Horton testified: "I didn't know none of those guys, I just made those two sales … and they got me on those two sales. Those are the only two sales they had me on." (N.T. 53-54). Further, the court asked Horton if he would have agreed that he "worked with others to conspire, confederate, agree or to be involved with … drug dealing", and he replied "I had no dealings with it [i.e., the conspiracy]." When next asked by the court, "and so … you weren't guilty of a conspiracy, your telling me?", Horton responded "Yes sir." (N.T. 55).

With respect to the "safety valve", Horton conceded that trial counsel's testimony was true that he did not want to sit down with the government and tell them about his involvement with the case. (N.T. 55).

When re-examined by Becker, Horton stated that there were some circumstances in which he would have pled guilty to conspiracy if he did not have to sit down with the government and tell them of his involvement in the

case. Horton also agreed to Becker's question that if the plea agreement had good terms he could have admitted that others supplied drugs to him to sell, i.e., a conspiracy. Remarkably, however, when re-crossed by the government and asked if he just told the court that he was not guilty of a conspiracy, Horton again replied, "I wasn't involved with conspiracy", and that "I'm not involved in a conspiracy." (N.T. 57).

After reviewing the record, including the hearing transcript and the supplemental briefs submitted by the parties, the court finds that it was error for trial counsel not to have shown Horton the formal written plea agreement he received from O'Hara. Although it appears that trial counsel did in fact discuss some of the contents of the proposed formal written plea agreement with Horton, it would be error if trial counsel did not discuss the entire actual plea agreement with Horton. In these respects, trial counsel's representation of Horton appears to be deficient.

No doubt that "[t]he guarantee of effective assistance of counsel extends to the plea bargaining stage, whereby '[d]efense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.'" Giamo, 153 F.Supp.3d at 755 (citing Frye, 132 S.Ct. 1399). "This duty requires counsel to advise a defendant so that they may 'make a reasonably informed decision

whether to accept a plea offer.'" Id. (citing United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)). Further, "[United States v. Bui, 795 F.3d 363 (3d Cir. 2015)] clearly stands for the proposition that effective assistance of counsel extends to advice about a guilty plea, and requires that counsel be knowledgeable on the law applicable to the charges against the client, and correctly advise the client." Id. at 758.

In cases such as the instant one, in which the defendant "claims that but for ineffective counsel, he would have accepted the plea offer and plead guilty and would have received a lesser sentence as a result", id. at 760, the claim "is subject to Strickland, and a review of the 'prejudice prong.'" Id. "The issue is whether [Horton] can establish with reasonable probability that the plea offer would have been accepted by him and presented to the Court but for ineffective counsel." Id. "[T]he defendant, in a post-conviction setting, has the burden of showing prejudice" from ineffective assistance of counsel. Id.

The court in Giamo, id. at 760-61, in holding that the defendant must demonstrate he suffered prejudice as a result of counsel's deficient performance, cited to the following language from Frye, 132 S.Ct. at 1409-11:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, *defendants must demonstrate a*

*reasonable probability* they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.") ("[A] defendant in Frye's position must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." (emphasis added).

Also, "the petitioner must establish prejudice, showing that the 'outcome of the plea process would have been different with competent advice.'" Giamo, 153 F.Supp.3d at 761 (citation omitted). Thus, to prove his second claim Horton "must show a reasonable probability that with effective assistance: (1) the plea offer would have been presented to the Court, such that the defendant would have accepted the plea and the prosecution would not have withdrawn it; (2) the Court would have accepted it; (3) and that the conviction, sentence, or both, would have been less severe than what was imposed." Giamo, 153 F.Supp.3d at 761 (citations omitted).

As far as the third stated element and the issue of whether Horton would have received a lower sentence if he had accepted the plea agreement to the conspiracy charge, there was no dispute that he would have. However, the court finds that Horton has not met his burden with respect to his second claim since he did not demonstrate a reasonable probability that, but for ineffective counsel, he would have accepted the government's formal written plea agreement which required him to plead guilty to the conspiracy charge,

not to the two delivery charges. The court finds trial counsel's testimony more credible than Horton's, and finds that Horton would not have accepted the proposed formal plea agreement, particularly since Horton repeatedly indicated to trial counsel, as well as to this court during the hearing, that he was not involved with a drug conspiracy and would not plead guilty to that charge. As mentioned, Horton clearly testified at the hearing that he was not guilty of conspiracy. Although Horton also testified that if there was a plea deal and he did not have to sit down with the government, he would have plead guilty to conspiracy, the court does not find this testimony credible. In fact, Horton's testimony demonstrated to the court that it could not have accepted a guilty plea from Horton to the conspiracy charge since he would not admit to all of the elements of this offense.

As such, Horton has failed to demonstrate a reasonable probability that he was prejudiced by trial counsel's deficient performance since the evidence was clear that Horton would not have accepted a plea agreement to the conspiracy charge and this was the only plea proposal that the government would make to him. As stated, even if Horton did accept such a plea agreement, the court would not have been able to accept his plea after a colloquy since he would not admit his guilt to conspiracy and to the elements of a conspiracy charge. Horton simply "cannot claim prejudice

39

when he has never, [in his motion, briefs and in his testimony] at the evidentiary hearing held as part of [his] petition, acknowledged [ ] sufficient criminal responsibility [with respect to the conspiracy charge] so that [either] the government [or the court] would have accepted [the plea agreement]." Id. at 762. Indeed, "[c]ourts should be wary of this sort of claim because defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails." Id. (quoting Day, 969 F.2d at 46). Further, "[a] petitioner's assertion that he would have accepted a plea offer must be credible ...." Id. Horton's testimony that he would have accepted the plea agreement to the conspiracy charge was not at all credible, and in fact, he also corroborated trial counsel's testimony that he would not have plead guilty to the conspiracy charge and would not have admitted to agreeing with others to sell drugs.

The court finds trial counsel's testimony was credible that Horton was "reasonably informed about the consequences of not accepting the plea offered by the government and his sentencing exposure, and the alternative of pleading not guilty and going to trial." Id. at 755. Trial counsel further explained to Horton the consequences if he testified at trial and was later found by the court to have lied. The court finds that even if it was error not to show the proposed formal plea agreement to Horton, through their ongoing

discussions about the case, Horton was "reasonably informed as to the terms, risks, and conditions of the [proposed] plea [agreement]", id., and he was able to make an informed decision that he would not accept any plea deal if he had to plead to the conspiracy charge. Trial counsel's testimony was also credible in that he told Horton the government would not accept a plea deal with him only involving the two drug delivery charges, as he repeatedly stated he wanted to do. Trial counsel further made it clear to Horton that to be eligible for a reduced sentence under the "safety valve", pursuant to 18 U.S.C. §3553(f), if he plead guilty to the conspiracy he would have to sit down with the government and tell of his involvement with the case, and Horton was not willing to do this. No doubt that one of the five requirements a defendant must satisfy to be eligible for a reduced sentence under §3553(f)'s safety-valve provision is that the defendant must have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *See* §3553(f)(5).

Thus, based on the record and the hearing testimony, the court finds that Horton has failed to show that he was prejudiced by trial counsel's performance.

Accordingly, Horton's second claim of ineffective assistance of trial counsel will be denied.


## IV.   CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Horton has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

## V.  CONCLUSION

Based on the foregoing, the court will **DENY** Horton's §2255 motion, (Doc. 661), and his supplemental motion, (Doc. 679). No COA shall issue. An appropriate order shall follow.

*s/ Malachy E. Mannion*

Malachy E. Mannion
United States District Judge

**Dated: April 27, 2020**
14-104-04